**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **GEORGE FLORES, TODD SCHAFFER, CARLOS LEONARDO DELCID, LESLIE DIAZ, and MELANIE WHITCOMB** on behalf of themselves and others similarly situated, | § § § § § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | **CIVIL ACTION NO. 4:21-cv-27** |
| **v.** | § | |
| | § | |
| **ACCC INSURANCE COMPANY and EMBARK GENERAL INSURANCE AGENCY, LLC,** | § § § § | |
| | § | |
| **Defendants.** | § | |

**MOTION FOR SANCTIONS**

Plaintiffs George Flores, Todd Schaffer, Carlos Leonardo Delcid, Leslie Diaz, and Melanie

Whitcomb ("Plaintiffs") and their counsel, Alfonso Kennard of Kennard Law P.C., should be

sanctioned under Federal Rule of Civil Procedure 11.  Plaintiffs originally asserted a claim against

ACCC General Agency, Inc. d/b/a ACC Insurance Company, who they allege laid them off

without proper notice under the Worker Adjustment and Retraining Notification Act ("WARN

Act").  As it turns out, Plaintiffs named the wrong defendant.  Their employer was actually ACCC

Insurance Company, not ACCC General Agency, Inc.  Further, the State of Texas—not ACC

Insurance Company—ordered the liquidation of the company and appointed a receiver to

effectuate the liquidation, which resulted in the layoffs on December 31, 2020.  The State's

liquidation order also provided that an automatic stay remained in effect with respect to actions

against ACCC Insurance Company, pursuant to Tex. Ins. Code § 443.008(c).  When made aware

of these issues and given an opportunity to either dismiss or amend their complaint, if appropriate,

to correct the deficiencies, Plaintiffs not only asserted a claim against their employer—ACCC

1

Insurance Company—they also added a claim against Embark General Insurance Agency, LLC ("Embark").  Bafflingly, however, they failed to include a single substantive allegation against Embark in their Amended Complaint.

In the Amended Complaint, Plaintiffs do not allege that they were ever even employed by Embark or that Embark terminated any employees.  Rather, all of the factual allegations relate to ACCC Insurance Company's conduct.  But the Amended Complaint does not allege any facts whatsoever that would justify attributing ACCC Insurance Company's actions to Embark.  Instead, in the introductory paragraph of the Amended Complaint, Plaintiffs state only that Embark "acquired" ACCC Insurance Company.  In reality, a *subsidiary* of Embark (not Embark) acquired *certain discrete assets* of ACCC Insurance Company following the liquidation—there was no "acquisition" of ACCC Insurance Company.  Regardless, Plaintiffs' single reference to Embark is nowhere near sufficient to impose liability on Embark under a theory of successor liability—as any sort of reasonable inquiry into applicable law would have made clear.

The Amended Complaint violates Rule 11 because the newly-added claim against Embark is so obviously deficient in light of clear legal requirements for WARN Act claims that it appears Plaintiffs' counsel either failed to conduct a reasonable legal inquiry or actively chose to ignore the law.  These actions have caused unnecessary delay, needlessly increased the costs of litigation, and required Embark to expend attorneys' fees for a claim that is not supported by any legal theory or facts.  In light of the patent insufficiency of the claim against Embark, Plaintiffs are pursuing Embark for an improper purpose: to get around the automatic stay referenced in the State's liquidation order, which makes the receivership proceedings the exclusive forum for claims against ACCC Insurance Company.  As such, sanctions here are warranted against Plaintiffs.

I.    **BACKGROUND**

On January 6, 2021, Plaintiffs filed their original complaint (Doc. No. 1) against ACCC General Agency, Inc. d/b/a ACC Insurance Company, asserting a claim under the WARN Act. ACCC General Agency, Inc. ("ACCC General Agency") filed a Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (Doc. No. 9) on February 16, 2021.  ACCC General Agency argued that: (1) Plaintiffs improperly named ACCC General Agency as "ACCC General Agency, Inc. d/b/a ACC Insurance Company," as no such entity exists, and instead should have named ACCC Insurance Company, which was their employer, and (2) even if Plaintiffs amended the Complaint to name ACCC Insurance Company, Plaintiffs failed to state a claim upon which relief can be granted because ACCC Insurance Company was not the Plaintiffs' employer for WARN Act purposes at the time of the layoff at issue—rather, an appointed receiver ordered the liquidation of the company and the resulting layoff on December 31, 2020.  As such, any claim must be asserted against the receiver in the receivership proceedings.  ACCC General Agency attached as Exhibit 2 to its Motion to Dismiss the publicly-available liquidation order ("the State Liquidation Order"), which demonstrates that the receiver was the only individual who could take actions on behalf of ACCC Insurance Company as of December 31, 2020.

Plaintiffs' Response to ACCC General Agency's Motion to Dismiss (Doc. No. 10) indicated that Plaintiffs intended to sue their employer, ACCC Insurance Company, rather than ACCC General Agency, and that they sought leave to amend to name the correct entity.  ACCC General Agency noted in its reply in support of its Motion to Dismiss (Doc. No. 11) (the "Reply") that Plaintiffs likely could not even validly sue their employer in this lawsuit because of the precedence of the receivership proceeding.  As noted in the Reply, because of the filing of the

receivership proceeding, there is an automatic stay of all proceedings against ACCC Insurance Company under Tex. Ins. Code § 443.008(c), which would include the instant lawsuit.

The Court entered an order granting ACCC General Agency's Motion to Dismiss (Doc. No. 16) on May 17, 2021, which provided that Plaintiffs could amend their Complaint within 30 days, "if necessary or appropriate."   Plaintiffs then filed the First Amended Collective Action Complaint (Doc. No. 17) (the "Amended Complaint") on June 16, 2021.  Plaintiffs named ACCC Insurance Agency as a defendant, instead of ACCC General Agency, but also asserted a claim, for the first time, against Embark.  Inexplicably, there are only two references to Embark in the entire Amended Complaint: (1) in the introductory paragraph, Plaintiffs assert (inaccurately) that ACCC General Insurance Company was "acquired" by Embark on December 1, 2020[1], and (2) Plaintiffs allege, in Paragraph 8, that Embark is a "Foreign Limited Liability Company who may be served through its registered agent CT Corporation System, 1999 Bryant."

On July 20, 2021, counsel for the receiver e-mailed Plaintiffs' counsel, after a telephone call earlier that same day, to inform him of the above deficiencies—namely, (1) that Plaintiffs are required by the Texas Insurance Code to file a proof of claim in the receivership and that the instant action was not jurisdictionally or procedurally appropriate, (2) that the purchase agreement between ACCC Insurance Company and Nations General Insurance Agency LLC did <u>not</u> provide for the sale of a business to Embark, but instead the sale of certain discrete assets to Nations General Insurance Agency LLC, and (3) that applicable statutory and case law prohibits a WARN Act claim to be asserted in this case.  *See* Declaration of Amanda Colvin, ¶ 2 and Exhibit 1 attached thereto, attached hereto as **Exhibit A**. The attorney for the receiver also attached to this same email the sale agreement and the liquidation order applicable to

---

[1]     In reality, Nations General Insurance Agency LLC, a subsidiary of Embark, acquired certain discrete assets from ACCC Insurance Company.

ACCC Insurance Company. *Id.* at ¶ 3. The attorney for the receiver further suggested that Embark should be dismissed and that Nations General Insurance Agency LLC should not be joined. *Id.*, Ex. 1. Despite this e-mail, Plaintiffs did not dismiss Embark.

Counsel for Embark likewise contacted Plaintiffs' counsel on September 14, 2021 to discuss the same issues raised in the July 20, 2021 email regarding the substantial and objective problems with Plaintiffs' claims, and demanded that Plaintiffs dismiss Embark with prejudice from this action. *Id.* at ¶ 4. Plaintiffs have still refused to dismiss Embark with prejudice.

Finally, on November 4, 2021, the attorney for the receiver again e-mailed Plaintiffs' counsel to inform him that the way to assert any claims Plaintiffs may have regarding any WARN Act violations would be for each claimant to file a proof of claim in the receivership by June 30, 2022, not for Plaintiffs to continue in federal court in the instant action. *Id.* at ¶ 5 and Ex. 4 attached thereto. Plaintiffs have still refused to dismiss Embark with prejudice.

## II.   **ARGUMENT**

### A.   **Legal Standard Governing Motions for Sanctions under Rule 11.**

Rule 11(b) of the Federal Rules of Civil Procedure ("Rule 11") provides in relevant part:

> By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law; [and]
>
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery[.]

Fed. R. Civ. P. 11(b)(1)-(3).

Rule 11 "requires attorneys and parties to conduct reasonable investigation into the facts and laws surrounding a case before filing a lawsuit or any other paper before a court." *Stanley v. Univ. of Tex. Med. Branch*, 296 F. Supp. 2d 736, 738 (S.D. Tex. 2003). The duties imposed by Rule 11 are affirmative, and "compliance with them must be measured at the time the document is signed." *Id.* "This evaluation is to be an objective one measured against the standard of reasonableness under the circumstances." *Id.* "[C]ontentions in a pleading may be made only after reasonable inquiry that the claim is warranted by existing law or good faith argument for the extension, modification, or reversal of existing law." *Pin v. Texaco, Inc.*, 793 F.2d 1448, 1455 (5th Cir. 1986) (internal quotation marks and citation omitted).

Violation of Rule 11 may subject the signer to sanctions, including "an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation." Fed. R. Civ. P. 11(c)(4). "Sanctions under Rule 11 are designed to 'discourage dilatory or abusive tactics and help to streamline the litigation process by lessening frivolous claims or defenses.'" *Pin*, 793 F.2d at 1455 (quoting Notes of Advisory Committee for 1983 Amendment).

### B.    Plaintiffs' Claims Against Embark Are Frivolous.

Plaintiffs' claims against Embark are clearly frivolous, as Plaintiffs have not included a single substantive allegation against Embark in the Amended Complaint. Instead, Plaintiffs have chosen to ignore clear, widely-available pleading requirements for WARN Act claims. The WARN Act "imposes liability only on an employer who orders the closing of a plant." *Administaff Companies, Inc. v. New York Joint Bd., Shirt & Leisurewear Div.*, 337 F.3d 454, 457 (5th Cir. 2003); *see also* 29 U.S.C. § 2104(a)(1). But Plaintiffs fail to even allege this most

6

basic of elements: that Embark was Plaintiffs' employer.  Instead, Plaintiffs allege that they "were employees of *Defendant ACCC Insurance Company* for purposes of the WARN Act until their termination along with over 50 employees on or about December 31, 2020."  Am. Compl., § 1 (emphasis added).  Further, they allege that "Defendant, *ACCC Insurance Company*, is an employer within the meaning of the WARN Act, in that Defendant has employed 300 or more employees who work in aggregate at least 4000 hours per week, exclusive of overtime."  *Id.* at § 7 (emphasis added).  Plaintiffs have utterly failed to allege[2] (1) that they were ever employed by Embark, (2) that Embark employed sufficient employees to subject it to the WARN Act, or (3) that Embark terminated any employees.  It is thus entirely unclear under what theory Plaintiffs purport to hold Embark liable for the alleged violation.

The only semblance of a factual allegation related to Embark appears in the introductory paragraph of the Amended Complaint—*i.e.*, that ACCC Insurance Company was acquired by Embark.  Plaintiffs' counsel should be well aware that simply by acquiring a company (or a portion of a company) a purchaser does not become responsible for the seller's liabilities.  A cursory inquiry into the law of this Circuit would have informed counsel that "[t]he general rule of corporate-successor liability is that a corporation that purchases another corporation 'is not responsible for the seller's debts or liabilities, except where (1) the purchaser expressly or impliedly agrees to assume the obligations; (2) the purchaser is merely a continuation of the selling corporation; or (3) the transaction is entered into to escape liability.'"  *In Re Louisiana Crawfish Producers*, 772 F.3d 1026, 1030 (5th Cir. 2014) (quoting *Golden State Bottling Co. v. NLRB*, 414 U.S. 168, 182 n.5 (1973)); *see also Valdez v. Celerity*

---

[2]        Nor could they make any such allegations, as detailed further below.

*Logistics, Inc.*, 999 F. Supp. 2d 936, 940 (N.D. Tex. 2014) ("When a company is sold in an asset sale, the buyer ordinarily acquires the company's assets but not its liabilities.").

Plaintiffs have not alleged that any exception to the general rule applies.  Notably, the Fifth Circuit has never ruled on whether successor liability exists under the WARN Act.[3] Regardless, Plaintiffs do not even attempt to assert such a theory—instead, they have ignored well-established law and are apparently relying on the sole allegation that Embark acquired ACCC Insurance Company (which is not even accurate) as the basis for asserting a claim against Embark.

The pleading requirements to state a plausible claim for successor liability are clear: "plaintiffs must plead facts that enable the court to analyze the following elements: (1) whether there is substantial continuity between business operations of the successor and the predecessor; (2) whether the successor had notice of potential liability when it acquired the relevant assets; (3) whether the predecessor is able to provide relief directly; and (4) whether the overall equities support the imposition of successor liability." *Valdez*, 999 F. Supp. 2d at 946.  Courts routinely hold that where one or more of these elements have not been sufficiently pled, the claim fails as a matter of law.  *See Lobo v. Sprint Safety, Inc.*, No. 4:19-CV-3934, 2020 WL 1659888, at *4 (S.D. Tex. Mar. 30, 2020) (finding plaintiff failed to state a claim under the successor liability doctrine where plaintiff made no factual allegations about the purchaser's relationship with the seller or the transfer of business operations upon the acquisition); *Washington v. Patterson-UTI Energy, Inc.*, No. 5:16-CV-130-RP, 2016 WL 3081060, at *7 (W.D. Tex. May 31, 2016) (finding plaintiffs failed to state a claim under the successor liability doctrine against

---

[3]     Courts in other jurisdictions have held that the successor liability doctrine is not a proper basis for imposing WARN Act obligations on a purchaser.  *See McCaffrey v. Brobeck, Phleger & Harrison, L.L.P.*, 2004 U.S. Dist. LEXIS 2768, at *13 (N.D. Cal. Feb. 17, 2004).

a defendant where plaintiffs sufficiently alleged the first two elements but failed to allege any facts related to the third).  Moreover, merely repeating these elements in the complaint is not enough—rather, the plaintiff must plead *facts* that are relevant to this inquiry.  *See Hunt v. Calfrac Well Servs. Corp.*, No. 5:16-CV-325-OLG, 2016 WL 8849824, at *3 (W.D. Tex. July 29, 2016) ("Plaintiffs' conclusory allegations, which merely repeat the elements that Plaintiffs must establish to make out their claim, are not entitled to the assumption of truth and are insufficient to show the facial plausibility of Plaintiffs' successor liability claim").

Here, Plaintiffs have not even made an attempt to repeat any of the required elements for a successor liability claim, much less to include factual allegations supporting them.  *See In re Ames*, 993 F.3d 27, 36 (1st Cir. 2021) (finding sanction was warranted where plaintiff's counsel "ignored obvious factual gaps and clear legal requirements in naming [a particular defendant]" in an amended complaint).  In *In re Ames*, the court noted that "[t]o make out an equal protection claim under [42 U.S.C. § 1983], [plaintiff]—at a bare minimum—had to allege facts indicating that, compared with others similarly situated, he was selectively treated based on his race."  *Id.* (internal quotation marks and citation omitted).  Plaintiff's second amended complaint, however, "was utterly devoid of any reference to a person or persons similarly situated to [plaintiff]."  *Id.*  The court found that "[s]uch a glaring omission evinces either a disdain for honoring clearly established law or an ignorance of it."  *Id.*  Further, the court noted that the fact that the complaint "failed even to suggest (in a race-discrimination case) that [the defendant's] actions were motivated by racial considerations indicates culpable carelessness on [plaintiff's counsel's] part."  *Id.*  The court in *Ames* also emphasized that just because "a claim may be actionable as to one defendant does not excuse bringing that claim against another defendant as to whom the claim is obviously baseless," because under Rule 11, "a pleader owes

an independent responsibility to each defendant whom he chooses to sue." *Id.  See also Pin*, 793 F.3d at 1455 (finding sanctions were warranted where claims added in amended complaint were patently insufficient in light of the allegations of the complaint).

Here, as in *In re Ames*, the allegations in the Amended Complaint as to Embark are so obviously deficient in light of clear legal requirements for WARN Act claims that it appears Plaintiffs either failed to conduct a reasonable legal inquiry or actively chose to ignore the law. Either way, sanctions are warranted.  It was entirely unreasonable for Plaintiffs to assert a WARN Act claim against Embark in the Amended Complaint without adding a shred of factual support suggesting culpable conduct on the part of Embark.

The patent insufficiency of the WARN Act claim against Embark, along with the prior proceedings in this case, suggest that Plaintiffs are pursuing Embark for an improper purpose. ACCC General Agency's Motion to Dismiss and Reply put Plaintiffs on notice of the State Liquidation Order and the automatic stay limiting actions against ACCC Insurance Company. Plaintiffs' sudden pursuit of Embark appears to be an end run around the automatic stay and an attempt to avoid a suit against the receivership estate. *See Pin*, 793 F.3d at 1455 (finding sanctions were warranted where plaintiffs hastily amended their complaint to add baseless federal law claims, shortly after it appeared likely that the state law claims in the action would be foreclosed by a proposed settlement in Delaware state court).  Put simply, Embark does not belong in this lawsuit, and it was unreasonable for Plaintiffs' counsel to allege otherwise.  Here, as in *Pin*, "the elusive character of the theory of the [A]mended [C]omplaint" supports the conclusion that Plaintiffs' counsel "is grasping at straws in an effort to keep this lawsuit afloat." *Id.*  Such tactics, which cause unnecessary delay and needlessly increase the costs of litigation, constitute a violation of Rule 11.  Consequently, sanctions are warranted.

**C.**     **Both Embark and the Attorney for the Receiver Informed Plaintiffs of Their Pleading Deficiencies, yet Plaintiffs Ignored Them.**

On multiple occasions and in multiple ways, counsel for Embark as well as counsel for the receiver notified Plaintiffs' counsel of the blatant and egregious deficiencies in the Amended Complaint.  On July 20, 2021, counsel for the receiver e-mailed Plaintiffs' counsel, after a telephone call earlier that same day, to inform him of the above deficiencies—namely, (1) that Plaintiffs are required by the Texas Insurance Code to file a proof of claim in the receivership and that the instant action was not jurisdictionally or procedurally appropriate, (2) that the purchase agreement between ACCC Insurance Company and Nations General Insurance Agency LLC did not provide for the sale of a business to Embark, but instead the sale of certain discrete assets to Nations General Insurance Agency LLC, and (3) applicable statutory and case law prohibits a WARN Act claim to be asserted in this case.  *See* **Exhibit A**, ¶ 2 and Exhibit 1 attached thereto.  The attorney for the receiver also attached to this same email the sale agreement and the liquidation order applicable to ACC Insurance Company.  *Id*. at ¶ 3. The attorney for the receiver further suggested that Embark should be dismissed and that Nations General Insurance Agency LLC should not be joined.  *Id*., Ex. 1.  Despite this e-mail, Plaintiffs did not dismiss Embark with prejudice.

Counsel for Embark likewise contacted Plaintiffs' counsel on September 14, 2021 to discuss the same issues raised in the July 20, 2021 email regarding the substantial and objective problems with Plaintiffs' claims, and demanded that Plaintiffs dismiss Embark with prejudice from this action.  *Id.* at ¶ 4.  Plaintiffs have still refused to dismiss Embark with prejudice.

Finally, on November 4, 2021, the attorney for the receiver again e-mailed Plaintiffs' counsel to inform him that the way to assert any claims Plaintiffs may have regarding any WARN Act violations would be for each claimant to file a proof of claim in the receivership

11

by June 30, 2022, not for Plaintiffs to continue in federal court in the instant action.  *Id.* at ¶ 5 and Ex. 4 attached thereto.  Plaintiffs have still refused to dismiss Embark with prejudice.

      **D.    Sanctions Are Appropriate.**

"When there is no objective basis for an attorney's belief that a [pleading] is well grounded in fact and is warranted by existing law or good faith argument for the extension, modification, or reversal of existing law, then the Court should impose sanctions under Rule 11."  *McCrory v. Rapides Reg'l Med. Ctr.*, 635 F. Supp. 975, 982 (W.D. La. 1986), *aff'd sub nom. McCrory v. Rapides Reg'l Med.*, 801 F.2d 396 (5th Cir. 1986).  Such is the case here.  A district court has discretion to determine what sanction is appropriate.  *Thomas v. Capital Sec. Servs., Inc.*, 836 F.2d 866, 877 (5th Cir. 1988).  "[A]ttorneys' fees and reasonable expenses are expressly provided for by the rule as appropriate sanctions."  *Id.*; *see e.g., Stanley*, 296 F. Supp. 2d at 741 (awarding $20,000 in attorneys' fees and costs to defendants as sanction for Rule 11 violations).

Pursuant to the requirements of Rule 11(c)(2) that a motion for sanctions must be served but not filed unless the claims are not "withdrawn or appropriately corrected within 21 days after service," the undersigned counsel certifies that the instant motion was served on Plaintiffs' counsel on November 12, 2021, but Plaintiffs subsequently refused to remedy the issues raised herein and dismiss Embark from this case with prejudice.  Accordingly, the instant motion is properly filed more than 21 days after service of the motion on Plaintiffs' counsel and a subsequent refusal to correct the error and dismiss Embark with prejudice from this action.

**III.   <u>CONCLUSION</u>**

For the foregoing reasons, Defendant Embark General Insurance Agency, LLC respectfully requests that the Court impose sanctions upon Plaintiffs and their counsel, Alfonso Kennard of Kennard Law P.C., directing payment to Defendant Embark General Insurance Agency, LLC of

all reasonable attorneys' fees and other expenses incurred as a direct result of Plaintiffs' violation of Fed. R. Civ. P. 11 in an amount to be determined by the Court after submission of an application by Embark, and such other relief as the Court deems just and proper.

Respectfully submitted,

**BRYAN CAVE LEIGHTON PAISNER LLP**

By: */s/ Kyle S. Hirsch*
Kyle S. Hirsch
Attorney-in-Charge
Texas Bar No. 24117262
Two North Central Avenue, Suite 2100
Phoenix, Arizona 85004
Telephone: (602) 364-7000
Facsimile: (602) 364-7070
Email: kyle.hirsch@bclplaw.com

**ATTORNEYS FOR DEFENDANT EMBARK
GENERAL INSURANCE AGENCY, LLC**

## CERTIFICATE OF SERVICE

The undersigned hereby states that on the 9th day of December, 2021, a true and correct copy of the foregoing document was served on all counsel of record via the Court's ECF system.

/s/ Kyle S. Hirsch
Kyle S. Hirsch

## CERTIFICATE OF CONFERENCE

The undersigned hereby states that on the 12th day of November, 2021 she presented the instant motion to Plaintiffs' counsel, who has subsequently refused to dismiss the action with prejudice as requested in the instant motion.

/s/ Amanda E. Colvin
Amanda E. Colvin
**Attorney for Defendant**
**Embark General Insurance Agency, LLC**

EXHIBIT A

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| **GEORGE FLORES, TODD SCHAFFER, CARLOS LEONARDO DELCID, LESLIE DIAZ, and MELANIE WHITCOMB** on behalf of themselves and others similarly situated, | § § § § § § | |
| **Plaintiffs,** | § § | |
| **v.** | § § | **CIVIL ACTION NO. 4:21-cv-27** |
| **ACCC INSURANCE COMPANY and EMBARK GENERAL INSURANCE AGENCY, LLC,** | § § § § § | |
| **Defendants.** | § | |

## DECLARATION OF AMANDA COLVIN

Pursuant to 28 U.S.C. § 1746, I, Amanda Colvin, hereby state and declare as follows under oath:

1.      I am a Partner at Bryan Cave Leighton Paisner, LLP, and I represent Defendant Embark General Insurance Agency, LLC ("Embark") in the above-captioned action. I am personally familiar with the facts stated herein.  I submit this declaration in support of Embark's Motion for Sanctions.

2.      On July 20, 2021, at the time stated therein, I received as a CC recipient an email from Robert Nunnally ("Mr. Nunnally"), counsel for Prime Tempus, Inc., the Special Deputy Receiver of ACCC Insurance Company, directed to Plaintiffs' counsel, Alfonso Kennard ("Mr. Kennard").  A true and correct copy of the email is attached hereto as **Exhibit 1**.

3.      Mr. Nunnally attached two documents to the July 20, 2021 email: (1) the Order Appointing Liquidator and Permanent Injunction applicable to ACCC Insurance Company and

(2) the Purchase Agreement between ACCC Insurance Company in receivership and Nations General Insurance Agency, LLC.  *See* **Exhibit 2** and **Exhibit 3** attached hereto.

4.      On September 14, 2021, I contacted Mr. Kennard by telephone to discuss the same issues raised in the July 20, 2021 email regarding the substantial and objective problems with Plaintiffs' claims and demanded that Plaintiffs dismiss Embark with prejudice from this action.

5.      On November 4, 2021, at the time stated therein, I received as a CC recipient an email from Mr. Nunnally directed to Mr. Kennard.  A true and correct copy of the email is attached hereto as **Exhibit 4**.

I declare under penalty of perjury that the foregoing is true and correct.

EXECUTED this 8th day of December, 2021.

/s/ *Amanda E. Colvin*
Amanda E. Colvin

EXHIBIT 1



**From:** Robert Nunnally <robert@wnrlaw.com>
**Date:** July 20, 2021 at 2:58:09 PM EDT
**Subject: Re: Flores, et al v. ACCC Insurance Company & Embark General Insurance Agency, LLC**


Dear Alfonso:

I follow up on our discussion with last week concerning the Flores v. ACCC Insurance Company et al matter. I represent Prime Tempus, Inc., the Special Deputy Receiver of ACCC Insurance Company.I appreciate your taking the time to speak to Steve and I last week.

I attach the following documentation:

1. The Order Appointing Liquidator and Permanent Injunction. Pursuant to Texas Insurance Code Section 443.008's automatic stay and the stay in Section IV of the order, any suit against ACCC Insurance Company is stayed. So far the Liquidator has not filed an application to approve the proof of claim form and set a deadline for filing of proofs of claims. When that is set, then claimants can follow the proof of claim process set up by the Court and the Texas Insurance Code. The priority statute applicable to insurance company insolvencies puts claims of policyholders at a higher priority than claims of employees. Texas Insurance Code Section 443.301.

2. The Purchase Agreement between ACCC Insurance Company in receivership and Nations General Insurance Agency, LLC.  This agreement does not provide for a sale of the business to Embark, but instead provides for the sale of certain discrete assets defined in the agreement to its affiliate, Nations General Insurance Agency, LLC.  The agreement further

discusses discrete reinsurance transactions as to some Texas policies and some Alabama policies by Redpoint County Mutual Insurance Company and Incline Casualty Company. Separate agreements document those reinsurance arrangements. I omitted those from the attached Nations General agreement.

I copy on this email Amanda Colvin, who is an attorney who represents Embark General Insurance Agency, LLC.

Based on the stay,the "governmental action" case law under the WARN Act,the McCarran-Ferguson Act and its case law on reverse pre-emption, the facts including the numbers of employees involved here, and situation with Embark, I request that this suit be dismissed.

Although I do not think there is a WARN claim, the route to take if your clients disagree would be to file a proof of claim. We can add your firm to our email service list so that you can monitor when the bar date is set and obtain a proof of claim form.  Please let me know on that, as some attorneys prefer not to get all the pleadings in the case, but others prefer to be on the service list.  Given that Embark's affiliate's role was not sufficient to impose upon it a WARN Act duty or liability, I also suggest that Embark General Agency should be dismissed and that its affiliate should not be joined.

If, contrary to my position, you wish to proceed against my client, please send me a Rule 4 to process. I will seek my client's authority to sign it. If you have any questions for Amanda, she authorized me to give you her email for contact purposes.

I look forward to hearing from you on this matter. Please feel free to call me with any questions or concerns about the receivership, or to call Amanda with any questions or concerns about Embark. I am sure both Amanda and I would be happy to set up a conference call with you if you'd like to talk to both of us on this.

.

Sincerely,

Robert H. Nunnally, Jr.
Wisener Nunnally Roth & Higgins LLP
245 Cedar Sage Suite 240
Garland, TX 75040
(972) 530-2200
(972) 530-7200

---

**From:** "sschueler" <sschueler@winstead.com>
**To:** "Alfonso Kennard" <alfonso.kennard@kennardlaw.com>
**Cc:** "robert" <robert@wnrlaw.com>, "Tom Van Arsdel"
<tvanarsdel@winstead.com>, "Rachel Giani" <rgiani@winstead.com>,
"Christopher Robertson" <crobertson@winstead.com>, "cristabel jimenez"
<cristabel.jimenez@kennardlaw.com>
**Sent:** Tuesday, July 6, 2021 2:50:30 PM
**Subject:** Flores, et al v. ACCC Insurance Company & Embark General
Insurance Agency, LLC

Alfonso,

Thanks for taking the time to talk with us today.  As you confirmed, process has not been requested nor served on either ACCC Insurance Company nor Embark General Insurance Agency, although you indicated you were going to request that the parties consider waiving service under Rule 4.  Robert Nunnally, copied here, represents the receiver for ACCC Insurance, and I don't know if a receiver can waive service.  In any event, he confirmed that if the insurance company or the receiver are served, they would move to dismiss based on the pendency of the receivership proceedings as the exclusive forum for claims against the insurance company.

Robert did agree to provide you some information about the terms of the sale of certain assets to Embark, to demonstrate that they are not a successor entity, and that there are not going to be any funds in the receivership proceedings to cover the claims your clients are asserting.

Thanks again for your time.

**Stephen W. Schueler**
Winstead PC  | 600 Travis Street | Suite 5200 |  Houston, Texas 77002
713.650.2763 *direct*  |  713.650.2400 *fax*  |  sschueler@winstead.com|  www.winstead.com

---

Information contained in this transmission is attorney privileged and confidential. It is intended for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copy of this communication is strictly prohibited. If you have received this communication in error, please immediately notify us by telephone.

**EXHIBIT 2**

12/14/2020 3:35 PM
**Velva L. Price**
**District Clerk**
**Travis County**
**D-1-GN-20-006278**
**Alexus Rodriguez**

Cause No. D-1-GN-20-006278

| | | |
|---|---|---|
| THE STATE OF TEXAS, | § | IN THE DISTRICT COURT OF |
| Plaintiff | § | |
| | § | |
| v. | § | TRAVIS COUNTY, TEXAS |
| | § | |
| ACCC INSURANCE COMPANY | § | |
| Defendant | § | 250th JUDICIAL DISTRICT |

## ORDER APPOINTING LIQUIDATOR
## AND PERMANENT INJUNCTION

On this day, the Court heard the *Application for Order of Liquidation* (Application) filed by Prime Tempus, Inc. in its capacity as Special Deputy Receiver (SDR) of ACCC Insurance Company (ACCC). The Application requests an order placing ACCC into liquidation pursuant to Chapter 443, the *Insurer Receivership Act*, and appointing the Texas Commissioner of Insurance (Commissioner) as Liquidator of ACCC (Liquidator). The *Application* also requests a Permanent Injunction pursuant to TEX. INS. CODE § 443.008, enjoining ACCC and its agents from conducting ACCC's business, and enjoining other parties from taking any actions against ACCC or its property in violation of the *Insurer Receivership Act*.

In accordance with the *Order of Reference to Master* entered on November 16, 2020 (Order of Reference), the Application was submitted to the Master appointed in this cause. The Master issued a recommendation pursuant to Rule 171 of the Texas Rules of Civil Procedure, which is incorporated herein, recommending that:

    a.    ACCC should be declared insolvent;

    b.    Further efforts to rehabilitate ACCC would be futile and would substantially increase the risk of loss to its policyholders, creditors and to the general public;

    c.    Each of the grounds for the entry of an Order of Liquidation alleged in the Application justifies entry of this Order; and

    d.    that the Application should be granted.

Having considered the pleadings, the evidence submitted, and the recommendation of the Master, the Court accepts the Master's recommendation and grants the Application.

It is therefore ORDERED, ADJUDGED and DECREED as follows:

## I.  FINDINGS OF FACT

1.1     On October 21, 2020, this Court issued its *Agreed Order Appointing Rehabilitator, Permanent Injunction and Notice of Automatic Stay*, placing ACCC into rehabilitation.

1.2     Further attempts to rehabilitate ACCC would be futile, and the continued operation of ACCC would be hazardous to policyholders, creditors, and the public, and would substantially increase the risk of loss to them.

1.3     ACCC is insolvent as defined in TEX. INS. CODE § 443.004(a)(13) as it does not have admitted assets at least equal to all its liabilities.

1.4     ACCC is in such a position that further transaction of its business would be hazardous financially to policyholders, creditors, and the general public.   Further efforts to rehabilitate ACCC would substantially increase the risk of loss to creditors, policyholders, and the general public. Grounds exist as set forth in the Application to place ACCC into liquidation.

1.5     Notice of the hearing on the Application was given to all persons required to be on the Certificate of Service in accordance with TEX. INS. CODE § 443.007 and the Order of Reference.

## II.  CONCLUSIONS OF LAW

2.1     This Court has jurisdiction over the parties and the subject matter of this action under TEX. INS. CODE § 443.005(c).

2.2     Grounds exist to place ACCC into liquidation pursuant to TEX. INS. CODE § 443.057(2), because ACCC is insolvent as defined in TEX. INS. CODE § 443.004(a)(13).

2.3     Grounds exist to place ACCC into liquidation pursuant to TEX. INS. CODE § 443.057(8), as it would not be in the best interests of ACCC's policyholders, creditors, or the public to continue conducting its business, due to its deteriorating financial condition.

2.4     Grounds exist to place ACCC into liquidation pursuant to TEX. INS. CODE § 443.057(9) because it is in such a position that further transaction of its business would be hazardous financially to policyholders, creditors, and the general public.

2.5     In accordance with TEX. INS. CODE § 443.058, the SDR is entitled to an order of liquidation and a Permanent Injunction, and the Commissioner must be appointed as Liquidator of ACCC to TEX. INS. CODE § 443.151.

2.6     The Liquidator shall be vested by operation of law with title to all of ACCC's property as defined in TEX. INS. CODE § 443.004(a)(20) and records as described in TEX. INS. CODE § 443.017(a).  Such property shall include property of any kind or nature, whether real, personal, or mixed, including but not limited to money, funds, cash, cash equivalents, stock, bonds, account deposits, money market or investment accounts, statutory deposits, special deposits, contents of safe deposit boxes, funds held in shared, escrow or trust accounts (including, but not limited to, Amegy Bank of Texas premium escrow account ending in 8409 and Amegy Bank of Texas claims account ending in 0776), retainages and retainers, letters of credit, real estate, fixtures, furniture, equipment, books, records, documents data, papers, insurance policies, claim files, attorney's files and work product, accountant's files and work product, and all other records of ACCC, in whatever medium or form maintained or whatever nature, intellectual property, computer software and systems, information technology, internet domain names, patents and intangible assets, whether owned individually, jointly, or severally, wherever located, and all rights, claims or causes of action belonging to ACCC, whether asserted or not, including but not limited to accounts receivable, notes, premiums, subrogation, insurance and reinsurance

proceeds, rights to premiums and funds held on ACCC's behalf by its agents, including but not limited to ACCC General Agency, Inc., and all licenses held by ACCC (collectively, ACCC's Property).  The Liquidator's title shall extend to ACCC's Property, regardless of the name in which such items are held, where such items are located or whether such items are in the possession, custody and control of a managing general agent, third-party administrator, management company, data processing company, software development, maintenance or servicing company, attorney, accountant, affiliate, subsidiary, or other representative of ACCC.

2.7     Pursuant to TEX. INS. CODE § 443.151(a), the Liquidator shall be directed to take possession and control of ACCC's Property, wherever located.

2.8     The Liquidator may act as the Liquidator deems necessary or appropriate to perform his duties pursuant to the *Insurer Receivership Act*. The Liquidator shall have all the powers of ACCC's directors, officers and managers, and the authority of such persons are suspended except as specifically permitted by the Liquidator or his designees.

2.9     ACCC's officers, owner, managers, employees, and agents shall be required to cooperate with the Liquidator and his designees pursuant to TEX. INS. CODE § 443.010.

2.10    It is necessary for this Court to issue a permanent injunction pursuant to TEX. INS. CODE § 443.008(a) to carry out the provisions of TEX. INS. CODE Chapter 443, and prevent irreparable injury, loss, and damage to the general public and ACCC's creditors.  A necessity exists to enjoin ACCC's agents from conducting ACCC's business, except as specifically permitted by the Liquidator or his designees.  Further, a necessity exists to enjoin financial institutions or depositories from taking any actions in connection with ACCC's property, except as directed by the Liquidator or his designees; and to enjoin all

claimants or creditors from asserting claims or causes of action against ACCC, except as permitted by the *Insurer Receivership Act*.

2.11   Pursuant to TEX. INS. CODE § 443.008(c), an automatic stay remains in effect with respect to actions against ACCC or its property, effective on the commencement of this proceeding.   In accordance with TEX. INS. CODE § 443.008(f), the stay of actions against ACCC are in effect for the duration of this proceeding, and the stay of actions against ACCC's property is in effect for as long as the property belongs to the receivership estate.

2.12   TEX. INS. CODE § 443.001(b) provides that the *Insurer Receivership Act* may not be interpreted to limit the powers granted to the Commissioner under other provisions of law. Accordingly, this Order shall not be construed as a limitation of the Commissioner's powers granted under such provisions.

### III.  APPOINTMENT OF LIQUIDATOR

The Commissioner is appointed as Liquidator of ACCC, and granted the following duties and powers:

3.1   The Liquidator has all powers and authority granted by the *Insurer Receivership Act*, and any and all other powers and authority under applicable statutes and the common law of this State.

3.2   Pursuant to TEX. INS. CODE § 443.151(a), title to all of ACCC's Property, including but not limited to all the assets and rights described in this Order, is vested in the Liquidator. The Liquidator is authorized to take control and possession of ACCC's Property, wherever located, and remove all such property from ACCC's premises.

3.3   The Liquidator is authorized to conduct ACCC's business, administer ACCC's operations, and enter into any contracts necessary to perform the Liquidator's duties, at

his discretion, pursuant to TEX. INS. CODE § 443.154(a).

3.4     Pursuant to TEX. INS. CODE § 443.154, the Liquidator has all the powers of the ACCC's directors, officers, and managers, and the authority of such directors, officers, and managers is suspended, except as permitted by the Liquidator. The Liquidator is authorized to supervise, suspend, terminate, or dismiss any or all of the directors, officers, managers, employees, or agents of the ACCC, or retain such persons at his discretion, and compensate them as he deems necessary from the ACCC's funds.

3.5     The Liquidator has all of ACCC's rights as the customer of a financial institution.  The Liquidator is authorized to withdraw ACCC's Property from any banks, financial institutions and other depositories, agencies of any state or the federal government, and any other entities, or continue the operation of any accounts of ACCC, at his discretion. Such authority to continue the operation of accounts includes, but is not limited to, accounts from which payments of claims under policies of insurance were issued.

3.6     The Liquidator is entitled to possession of any records related to ACCC held by the ACCC's attorneys, accountants, managing general agents, third-party administrators, management companies, data processing companies, software development, maintenance or servicing company (including but not limited to Isthmus, Inc.), affiliates, subsidiaries, representatives or any other service providers under any agreements or other arrangements.

3.7     The Liquidator is authorized to file, prosecute, defend, or settle any action as he deems necessary, including any action to enforce the provisions of this Order.

3.8     Pursuant to TEX. INS. CODE § 443.154, the Liquidator may enter into contracts as necessary to perform the Liquidator's duties, and may assume or reject any executory

contract or unexpired lease to which ACCC is a party at his discretion pursuant to TEX. INS. CODE §443.013.

3.9      The Liquidator is authorized to change the locks on any property owned, leased, or occupied by ACCC.

3.10     The Liquidator is authorized to exclude any person from any property owned, leased, or occupied by ACCC, at his discretion.

3.11     The Liquidator is authorized to receive, collect, control, open and review all mail addressed to or intended for ACCC, or arriving at ACCC's address.

3.12     The Liquidator is authorized to use ACCC's property to transfer to a solvent assuming insurer any or all of ACCC's policy obligations under TEX. INS. CODE §443.154(h) if the transfer can be arranged without prejudice to applicable priorities under TEX. INS. CODE § 443.301.

3.13     ACCC and ACCC's agents shall be required to cooperate with the Liquidator and his designees pursuant to TEX. INS. CODE § 443.010.

3.14     TEX. INS. CODE § 443.154(a) authorizes the Liquidator to appoint a Special Deputy Receiver and employ or contract with legal counsel and other personnel as he deems necessary pursuant to TEX. INS. CODE § 443.154(a). The Special Deputy Receiver shall have all the rights and powers of the Liquidator, subject to any limitations imposed by the Liquidator. Pursuant to TEX. INS. CODE § 443.015, the Liquidator is authorized to set the compensation of any such Special Deputy Receiver or other persons as he deems necessary and pay for such services from ACCC's funds.

3.15     Pursuant to TEX. INS. CODE § 443.008(m), the Commissioner is not required to file a bond in connection with this proceeding, in his capacity as Liquidator or otherwise.

3.16     Any successor to the Commissioner shall be appointed as the Liquidator of ACCC. In the event a successor is appointed to be the Commissioner, the successor shall become the

Liquidator upon his or her appointment as Commissioner, and the former Commissioner shall be discharged as Liquidator as a matter of law.

3.17    The enumeration of the Liquidator's powers and authority in this Order shall not be construed as a limitation on the Liquidator to take any other action authorized by the *Insurer Receivership Act* or other applicable law that is not specified in this Order.

## IV.  PERMANENT INJUNCTION

The Clerk of this Court shall issue a Permanent Injunction against the persons and entities named below, with the following force and effect:

TO:    <u>ACCC and its agents, including but not limited to:</u>

ACCC, its current and former officers, directors, underwriters, managers and employees (including, but not limited Jack Henry Ikenaga Jr., Philip James Bither, Ross Edward Bennett, Jr., Frank M. Paris, Mike Cameron Weaver, Robert Mark Sumners, Michael Sear, and Jose Daniel Saenz); owners, affiliates and related entities (including ACCC Holding Corporation, ACCC Claims Service, Inc., Best Texas General Agency, Inc., Swift Premium Finance Company, Jack Henry Ikenaga, Jr., the Lutz Corporation, and Isthmus, Inc.); local recording agents, managing general agents (including ACCC General Agency, Inc. and Freedom National Insurance Services, Inc.), agents, third party administrators, representatives, associates, servants, adjusters, actuaries attorneys and accountants (including those acting in concert with them);

<u>Financial institutions, including but not limited to:</u>

Any and all banks, savings and loan associations; trust companies; credit unions; welfare trusts; or any other financial or depository institutions or brokerage in the possession of any of ACCC's property (including, but not limited to, US Bank and Amegy Bank); and

<u>All other parties, including but not limited to:</u>

Creditors, claimants, insurers, intermediaries, attorneys, accountants, accounting firms, tax return preparation firms and all other persons, associations, corporations, or any other legal entities asserting claims or causes of action against ACCC, or in possession of any of ACCC's Property, and the United States Postmaster.

Each of you are hereby RESTRAINED and ENJOINED from taking any and all of the following actions:

4.1    Doing, operating, or conducting ACCC's business under any charter, certificate of authority, license, permit, power or privilege belonging to or issued to ACCC, or exercising any direction, control, or influence over ACCC's business, except through the authority of the Liquidator or his designee;

4.2    Transacting any business of ACCC, including writing any new or renewal insurance coverage, in any manner except through the authority of the Liquidator or his designee;

4.3    Wasting, disposing of, converting, dissipating, or concealing, in any manner, any of ACCC's Property;

4.4    Using, releasing, transferring, selling, assigning, canceling, hypothecating, withdrawing, allowing to be withdrawn, offsetting, asserting ownership of, concealing, in any manner, or removing from this Court's jurisdiction or from ACCC's places of business, any of ACCC's Property, or any other items purchased by ACCC, or any items into which such property has been transferred, deposited or placed, or any other items owned by ACCC, wherever located, except through the authority of the Liquidator or his designee;

4.5    Releasing, transferring, selling, assigning, or asserting ownership of, in any manner, any claims, accounts receivable, or causes of action belonging to ACCC, whether asserted or not, except through the authority of the Liquidator or his designee;

4.6    Doing anything, directly or indirectly, to prevent the Liquidator or his designee from gaining access to, acquiring, examining, or investigating any of ACCC's Property or any other property, books, documents, records, or other materials concerning ACCC's business, under whatever name they may be found;

4.7    Obstructing or interfering in any way with the conduct of this proceeding or any incidental investigation as prohibited by TEX. INS. CODE § 443.010(b);

4.8    Intervening in this proceeding for the purpose of obtaining a payment from the receivership estate of ACCC as prohibited by TEX. INS. CODE § 443.005(i);

4.9     Making any claim, charge or offset, or commencing or prosecuting any action, appeal, or arbitration, including administrative proceedings as well as legal process served without permission of this Court, or obtaining any preference, judgment, attachment, garnishment, or other lien, or making any levy against ACCC, ACCC's Property or any part thereof, or against the Liquidator, except as otherwise permitted by the *Insurer Receivership Act*.

IT IS FURTHER ORDERED that each of you shall make available and disclose to the Liquidator or his designees the nature, amount, and location of ACCC's Property, and immediately surrender all such property to the Liquidator or his designees.  ACCC's attorneys, accountants, affiliates, managing general agents, third-party administrators, management companies, data processing companies, software developer, maintenance or servicing companies and any other service providers or representatives (including but not limited to Arnold & Taylor, PLLC and Winstead PC), and ACCC's owners, affiliates and related entities (including, without limitation, ACCC Holding Corporation, ACCC Claims Service, Inc., the Lutz Corporation, Best Texas General Agency, Inc., Swift Premium Finance Company, Isthmus, Inc. and Jack Henry Ikenaga, Jr.), shall turn over all records related to ACCC to the Liquidator or his designees.

IT IS FURTHER ORDERED that ACCC, ACCC's agents and those transacting insurance business of ACCC must cooperate with the Liquidator or his designee as required by TEX. INS. CODE § 443.010(a).

IT IS FURTHER ORDERED that the United States Postmaster and any other delivery services shall deliver to the Liquidator any items addressed to or intended for ACCC.

## V.  STAY OF PROCEEDINGS

5.1      An automatic stay remains in effect with respect to actions against ACCC or its property pursuant to TEX. INS. CODE § 443.008(c). In accordance with TEX. INS. CODE § 443.008(f), such stay of actions against ACCC is in effect for the duration of this proceeding, and the stay of actions against ACCC's property is in effect for as long as the property belongs to the receivership estate.

## VI.  CONTINUATION OF COVERAGE

6.1     All reinsurance contracts by which ACCC has assumed insurance obligations of another insurer are canceled upon entry of this order pursuant to TEX. INS. CODE § 443.152(a).

6.2     Unless further extended by the Liquidator with the approval of this Court pursuant to TEX. INS. CODE § 443.152(b), all policies, insurance contracts, surety bonds or surety undertakings issued by ACCC in effect at the time of issuance this order shall continue in force only until the earlier of:

    a.   January 29, 2021, at 11:59:59 p.m., the 30th day after the effective date of this order;

    b.   the date of expiration of the policy coverage;

    c.   the date the insured has replaced the insurance coverage or otherwise terminated the policy; or

    d.   The effective date of a transfer of a policy to an assuming insurer.

## VII.  EFFECTIVE DATE OF ORDER

7.1   This Order shall become effective at 12:01 a.m., December 30, 2020.  The *Agreed Order Appointing Rehabilitator, Permanent Injunction and Notice of Automatic Stay* shall remain in full force and effect until 12:01 a.m., December 30, 2020.

## VIII.  OTHER ORDERS

8.1    Pursuant to TEX. INS. CODE § 443.055, this Order constitutes a final judgment, provided

that this Court shall retain jurisdiction to issue further orders pursuant to the *Insurer*

*Receivership Act*. This Order shall continue in full force and effect until the entry of an

order by this Court terminating liquidation entered under TEX. INS. CODE § 443.352.

Pursuant to TEX. INS. CODE § 443.151(a), this proceeding is exempt from any dormancy

requirements.

8.2    The State of Texas and the Attorney General of Texas shall have a claim for reasonable

attorneys' fees and court costs pursuant to TEX. GOV'T CODE §402.006, and the amount and

payment of such claim are subject to the provisions of TEX. INS. CODE Chapter 443.

8.3    In accordance with TEX. INS. CODE § 443.001(b), this Order does not limit the rights of the

Commissioner or the Texas Department of Insurance to take any administrative action or

issue any administrative order pursuant to the Texas Insurance Code.

8.4    In accordance with TEX. INS. CODE § 443.007(d), the Liquidator and SDR may provide

notice of any application by first class mail, electronic mail, or facsimile transmission, at

his or its discretion.

8.5    Anyone over the age of 18 who is not a party to nor interested in the outcome of this suit

may serve all citations, writs, and notices in this cause.

8.6    All of the foregoing is subject to further orders of this Court.


SIGNED at Austin, Travis County, Texas, on this the __14th__ day of ___December___, 2020.


PROPER NOTICE GIVEN.
NO OBJECTION FILED.
SUBMITTED
RECOMMENDED
SIGNED ON __11__ DAY OF __Dec.__, 20_20_

_____
TOM COLLINS, RECEIVERSHIP SPECIAL MASTER

_____
DISTRICT JUDGE PRESIDING
TIM SULAK

EXHIBIT 3

EXECUTION VERSION

# PURCHASE AGREEMENT

### BY AND BETWEEN

### NATIONS GENERAL INSURANCE AGENCY, LLC,

### AND

### ACCC INSURANCE COMPANY IN RECEIVERSHIP

## PURCHASE AGREEMENT

THIS PURCHASE AGREEMENT (this "***Agreement***") is made and entered into this 31st day of December, 2020, and effective as of December 1, 2020 (the "***Effective Date***"), by and between ACCC INSURANCE COMPANY in Receivership, a property and casualty insurance company organized and operating under the laws of the State of Texas ("***Seller***"), and NATIONS GENERAL INSURANCE AGENCY, LLC, an affiliate of Embark General Insurance Agency, LLC (the "***Buyer***").

## RECITALS

**WHEREAS**, Seller is a property and casualty insurance company domiciled in the State of Texas, licensed to write automobile insurance in Texas and Alabama and has heretofore issued certain automobile insurance policies, but is now in receivership pursuant to the orders issued by the 250th District Court of Travis County, Texas (the "***Receivership Court***") described below;

**WHEREAS**, on October 16, 2020, the Receivership Court in the case styled The State of Texas v. ACCC Insurance Company, Cause No. D-1-GN-20-006278 entered its *Agreed Order Appointing Rehabilitator, Permanent Injunction, and Notice of Automatic Stay* ("***Rehabilitation Order***") placing ACCC Insurance Company into receivership ("***ACCC Receivership***") and appointing the Commissioner of Insurance of the State of Texas (the "***Commissioner***") its Receiver;

**WHEREAS**, effective October 22, 2020, the Receiver appointed Prime Tempus, Inc. as Special Deputy Receiver;

**WHEREAS**, on November 24, 2020, the Special Deputy Receiver filed the *Special Deputy Receiver's Application for Order of Liquidation*;

**WHEREAS**, on December 14, 2020, the Receivership Court entered its *Order Appointing Liquidator and Permanent Injunction*, placing ACCC into liquidation effective December 30, 2020;

**WHEREAS**, on December 21, 2020, the Receivership Court entered its *Order Granting Application to Approve Transfers of Certain Policies of Insurance* ("***Approval Order***"). Pursuant to the Approval Order, the Receivership Court granted the Special Deputy Receiver authority to take any actions reasonably necessary to effectuate the transactions described in the *Application to Approve Transfers of Certain Policies of Insurance* (the "***Transactions***"). The Court authorized among these powers, negotiating and executing agreements and other documents the Special Deputy Receiver deems necessary, and making the payments and transfers contemplated as part of the Transactions;

**WHEREAS**, the Transactions include assumption reinsurance transactions among Seller and each of Redpoint County Mutual Insurance Company ("***Redpoint***") and Incline Casualty Company ("***Incline***" and collectively with Redpoint, the "***Assuming Reinsurers***") pursuant to the Assumption Reinsurance Agreements attached hereto as **Exhibit A-1** and **Exhibit A-2** (the "***Assumption Reinsurance Agreements***") pursuant to which certain in-force automobile insurance policies of Seller in the States of Alabama and Texas are being assumed by the Assuming Reinsurers effective as of the Effective Date (the "***Assumed Policies***");

**WHEREAS**, the Transactions also include the transactions contemplated by this Agreement;

**WHEREAS**, the Seller will transfer to the Assuming Reinsurers (i) all premium payments, fees and other funds due concerning the Assumed Policies collected by the Seller, less commissions and premium refunds previously paid, for the period as of and after the Effective Date, subject to the reconciliation and settlement procedures set forth in the Assumption Reinsurance Agreements, and (ii) all unearned premium collected for the Assumed Policies prior to the Effective Date, less commissions and premium refunds previously paid, subject to the reconciliation and settlement procedures set forth in the Assumption Reinsurance Agreements (collectively, the ***"Transferred Funds"***);

**WHEREAS**, Buyer will be receiving the Transferred Funds and Buyer and the Assuming Reinsurers will pay to the Seller the consideration specified in this Agreement, plus additional consideration upon renewal of the Assumed Policies; and

**WHEREAS**, Seller desires to sell, transfer, and assign the Acquired Assets (defined below) to Buyer, and Buyer desires to acquire such Acquired Assets, as more particularly described herein.

**AGREEMENT**

**NOW**, **THEREFORE**, in consideration of the promises and the mutual covenants and agreements contained in this Agreement, the Parties, intending to be legally bound, do hereby agree as follows:

**ARTICLE I**
**DEFINITIONS**

For all purposes of this Agreement, the following definitions shall apply unless the context requires otherwise.  Any other capitalized terms are used as defined in other Sections of this Agreement.

"***Affiliate***" means any Person that directly or indirectly controls, is controlled by or is under common control with a Person, including, without limitation, the possession, directly or indirectly, of power to direct or cause the direction of management or policies (whether through ownership, by contract, or otherwise)

"***Acquired Assets***" means the following assets of Seller:

> (a)     Renewal rights and policy expirations for all Assumed Policies; and

> (b)     Seller's electronic and paper records and files pertaining to the assets set forth in part (a), above, including, but not limited to and to the extent available, all records and files related to brokers, consultants and policyholders (including broker, consultant, and policyholder lists, mailing lists, sales records, correspondence with brokers, consultants, and policyholders, policyholder files, and account histories), underwriting, enrollment and claims data, and records of purchases from and correspondence with suppliers; and all related business records, financial and accounting records, and other books and records, all to the extent they are primarily related to the assets set forth in part (a), above.

*"Alabama ACCC Business"* means the in-force Alabama private passenger automobile policies included in the Assumed Policies.

*"Business Day"* means any day other than Saturday, Sunday, and any day on which commercial banks in Texas are authorized by Law to be closed.

*"Collected Premium"* means premium collected by the Assuming Reinsurers or Buyer after the Effective Date.

*"Governing Documents"* means, with respect to a Person, (a) its articles or certificate of incorporation and bylaws, certificate of formation and limited liability company agreement, articles of organization and operating agreement, certificate of limited partnership and limited partnership (or equivalent creation, formation or organizational documents) and (b) any amendment or supplement to the foregoing.

*"Governmental Entity"* means any court, arbitrator, department, commission, board, bureau, agency, authority, instrumentality, or other body, whether federal, state, municipal, foreign or other.

*"Knowledge"* means that which is known by the executive officers of the applicable Person.

*"Law"* means any federal, state or local statutes, laws, ordinances, rules, or regulations.

*"Liability"* with respect to any Person, shall mean any liability or obligation of such Person of any kind, character or description, whether known or unknown, absolute or contingent, accrued or unaccrued, disputed or undisputed, liquidated or unliquidated, secured or unsecured, joint or several, due or to become due, vested or unvested, executory, determined, determinable or otherwise, and whether or not the same is required to be accrued on the financial statements of such Person.

*"License"* means all licenses, permits, approvals, authorizations, and consents of all Governmental Entities.

*"Net Collected Premium"* means Collected Premium, net of premiums refundable due to termination or cancellation.

*"Order"* means any order, writ, injunction, ruling, charge, judgment, plan or decree of a Governmental Entity.

*"Parties"* means Buyer and the Seller.

*"Party"* means any of Buyer or Seller.

*"Person"* means any individual, corporation, partnership, joint venture, limited liability company, association or other business entity and any trust, unincorporated organization, or government or any agency or political subdivision thereof.

*"Premium Taxes"* means any taxes assessed on premiums for Assumed Policies which (i) remain unpaid as of the Closing Date, or (ii) are payable after the Closing Date but relate to premiums collected prior to the Effective Date.

*"Renewed Policy"* means any Assumed Policy that is renewed on a policy issued by one of the Assuming Reinsurers.

*"Texas ACCC Business"* means the in-force Texas private passenger automobile policies included in the Assumed Policies.

## ARTICLE II
## PURCHASE AND SALE; ASSUMED LIABILITIES; PURCHASE PRICE

2.1     **Purchase and Sale**. Subject to the terms and conditions set forth in this Agreement, on an "AS IS" basis, except for the representations, warranties, covenants and agreements herein contained, at the Closing, the Seller shall sell, transfer, assign, and convey the Acquired Assets to the Buyer, and the Buyer shall purchase, acquire and accept from the Seller, all of the interest of the Seller in the Acquired Assets.  For the avoidance of doubt, the Buyer is not, by this Agreement, assuming any Liabilities of the Seller.

2.2     **Purchase Price.Total Consideration**. The total consideration to be paid by the Buyer for the Acquired Assets, and to be remitted by the Buyer for the rights and obligations of the Assuming Reinsurers under the Assumption Reinsurance Agreements (collectively, the "***Total Consideration***"), shall be the sum of the following amounts:

(i)     **Net Collected Premium**. For each dollar of Net Collected Premium received by Buyer for the Assumed Policies or the Renewed Policies within the first twelve (12) months after the Effective Date, Buyer shall pay (i) six and a quarter percent (6.25%) for the first $50,000,000 in Net Collected Premium, (ii) seven and a half percent (7.5%) for the first $50,000,001-90,000,000 in Net Collected Premium, and (iii) eight and a half percent (8.5%) for Net Collected Premium in excess of $90,000,000 (collectively, the "***Net Collected Premium Consideration***"); and

(ii)     **Renewal Premium**. For each dollar of Net Collected Premium received by Buyer for Renewed Policies after December 1, 2021 and through December 1, 2022, Buyer shall pay one and one half percent (1.5%) of Net Collected Premium for each such Renewed Policy that remains in force (the "***Renewal Consideration***").

(b)     **Premium Included in Transferred Funds**. For the avoidance of doubt, any premiums included in subpart (ii) of the definition of Transferred Funds shall not be included in the calculation of Total Consideration.

(c)     **Minimum Total Consideration**.  Notwithstanding anything herein to the contrary, the minimum Total Consideration payable by Buyer to Seller shall be One Million Two Hundred Fifty Thousand Dollars ($1,250,000); provided, however, that in the event the Net Collected Premium determined for purposes of Section 2.2(a)(i) is less than Thirty Million Dollars $30,000,000, such minimum Total Consideration shall be reduced proportionately.

(d)     **Example Calculation**.  By way of example, if the Net Collected Premium for purposes of Section 2.2(a)(i) totaled $110,000,000, the Net Collected Premium Consideration would equal $7,825,000 (that is, ($50,000,000 x 6.25%) + ($40,000,000 x 7.5%) + ($20,000,000 x 8.5%)).

(e)     **Determination of Total Consideration**.

(i)     The Buyer will provide the Seller with a report (the "***Total Consideration Report***") not later than thirty (30) days after the end of each calendar quarter (i.e., March 31, June 30, September 30 and December 31) starting with the first calendar quarter following the Closing Date.  The Total Consideration Report shall set forth the Net Collected Premium Consideration and the Renewal Consideration for the applicable calendar quarter and the cumulative Total Consideration from the Effective Date. Unless the Seller disputes a Total Consideration Report, the Seller shall endeavor to provide prompt notice to the Buyer that the Seller accepts such Total Consideration Report. In the event that the Seller disputes the amount of Total Consideration identified in a Total Consideration Report, the Seller shall give notice thereof to the Buyer within thirty (30) days of the Seller's receipt of the applicable Total Consideration Report. During such thirty (30) day period, the Buyer shall provide the Seller and its representatives with such access to all books, records, files, data and such information from the Buyer as the Seller may reasonably request to respond to the Total Consideration Report. The Seller and the Buyer will seek to informally resolve such dispute promptly by promptly escalating such dispute to the following designated individuals: (a) in the case of Buyer, Bill Caldwell; and (b) in the case of the Seller, Craig Koenig; provided, however, the Buyer or the Seller may designate by written notice a different designated individual. Any dispute not resolved within thirty (30) days, after receiving access to all books, records, files, data and such information from the Buyer, will be submitted for further determination to an independent regional accounting firm in the United States mutually agreeable to the Seller and the Buyer (the "***Auditor***") for final resolution in accordance with the terms and provisions of this Agreement. The Seller and the Buyer shall use their respective best efforts to cause the Auditor to make its determination as soon as possible, but in no event later than thirty (30) days after its receipt of the disputed matters. Such determination shall be final, binding and conclusive upon all of the Parties hereto. The Auditor's determination shall be limited to matters of dispute which are raised by the Seller. In no event shall the Auditor's determination of the calculations on the Total Consideration Report be less than Seller's determination or greater than the Buyer's determination. The Auditor's resolution of any such disagreement shall be reflected in a written report, which will be delivered promptly to the Seller and the Buyer (the "***Auditor Report***"). All fees and disbursements of the Auditor shall be paid by the Party other than the Party with whose determination the Auditor agrees; provided, however, that if the Auditor's determination represents a compromise between the determination of the Seller and the Buyer, then the Seller and the Buyer shall pay fifty percent (50%) of such fees and disbursements. If a retainer is required by the Auditor, the retainer shall be split equally between the Seller and the Buyer; provided, however, that the retainer shall be considered part of the fees and expenses of such Auditor and if any Party has paid a portion of such retainer, such Party shall be entitled to be reimbursed by the other Parties to the extent required by this Section. The Seller and the Buyer shall be deemed to have accepted the Total Consideration Report, and the calculations thereon, each as adjusted based

on the Auditor's determination as of the date the Auditor Report is received by them.

(ii)     A Total Consideration Report shall be deemed accepted on the earlier to occur of: (A) notice from the Seller that the Seller accepts the Total Consideration Report, (B) expiration of the thirty (30) day time period following receipt by the Seller of the Total Consideration Report without the Seller providing notice to the Buyer of a dispute with respect to the Total Consideration Report, (C) mutual written agreement by the Seller and the Buyer of a Total Consideration Report, or (D) the resolution of any dispute by the Auditor pursuant to the Auditor Report.

(f)     **Payment of the Total Consideration**.

(i)     Prior to the date hereof, Buyer has paid, or caused to be paid, Three Hundred Thousand Dollars ($300,000) (the "***Initial Payment***") to the Seller, which the Parties acknowledge and agree is an advance deposit on payments of Total Consideration.  The Initial Payment shall be applied as a credit to and offset the Total Consideration payable by the Buyer.

(ii)     Subject to Section 2.3(f)(i), Buyer shall pay the applicable Net Collected Premium Consideration to the Seller, as determined under Section 2.2(a)(i) within five (5) Business Days following the date of the applicable accepted Total Consideration Report; provided, however, that notwithstanding the foregoing, three quarters of one percent (0.75%) of the Net Collected Premium Consideration will be held by Buyer and paid to the Seller on the one-year anniversary of the Closing Date.

(iii)     Subject to Section 2.3(f)(i), Buyer shall pay the applicable Renewal Consideration to the Seller, as determined under Section 2.2(a)(ii) within five (5) Business Days following the date of the applicable accepted Total Consideration Report.

(iv)     All payments hereunder shall be made by wire transfer of immediately available funds, to an account previously designated in writing by the Party to be paid.

(v)     Notwithstanding the foregoing or anything else to the contrary in this Agreement, any unearned premium transferred to Buyer as of December 1, 2020, and any premiums collected on or after December 1, 2020 and transferred to Buyer, will be considered to have been written by the Assuming Reinsurers. As such, any Premium Taxes due on these premiums will be the obligation of the Assuming Reinsurers and/or Buyer.

(g)     **Payment of Transferred Funds**.  On the Closing Date, the Seller shall transmit the Transferred Funds to the Buyer.

## ARTICLE III
## CLOSING

3.1     **Closing**. Subject to the following, the closing of the transactions contemplated by this Agreement (the "***Closing***") shall take place at 10:00 a.m. Central Time at the offices of Bryan Cave Leighton Paisner, 211 N. Broadway, Suite 3600, St. Louis, MO 63102 on that date which is the second (2nd) Business Day after the date upon which all conditions to Closing set forth in Article VIII and Article IX have been satisfied or waived (other than those conditions that, by their nature, are to be satisfied at Closing), or at such other date, time or place as the Parties hereto may mutually agree (the "***Closing Date***"). The Closing shall be effective as of 12:01 a.m. Central Time on the Closing Date. In lieu of an in-person Closing, the Closing may instead be accomplished by facsimile or email (in PDF format) transmission of the requisite documents, duly executed where required, and the subsequent exchange or original (non-electronic) signature pages. The transactions hereby contemplated shall be deemed consummated, notwithstanding any Party's failure or refusal to deliver original (non-electronic) signature pages. The Parties hereto acknowledge and agree that all proceedings at the Closing shall be deemed to be taken and all documents to be executed and delivered by all parties at the Closing shall be deemed to have been taken and executed simultaneously, and no proceedings shall be deemed taken nor any documents executed or delivered until all have been taken, executed and delivered.

## ARTICLE IV
## REPRESENTATIONS AND WARRANTIES OF SELLER

Seller makes the following representations and warranties to the Buyer, each of which is true and correct on the date hereof, shall be true and correct in all material respects on the Closing Date, and shall survive the Closing of the transactions provided for herein:

4.1     **Authority**.  The Approval Order, including without limitation Paragraphs 4-6, grants the Seller the authority to  enter into this Agreement and the other documents and instruments to be executed and delivered by the Seller pursuant hereto and to carry out the transactions contemplated hereby and thereby, including the authority and power to vest in the Buyer  title to all the Acquired Assets.

4.2     **Approvals and Consents**. The execution, delivery and performance of this Agreement by the Seller will not require the Seller to obtain the consent or approval of, or to make any filing with, any Governmental Entity or any other Person.

4.3     **Conduct of Business**.  Since the entry of the entry of the Rehabilitation Order through December 29, 2020, to the best of Seller's Special Deputy Receiver's Knowledge, the ACCC Receivership has operated in rehabilitation pursuant to Texas Insurance Code § 443.101 *et seq.*  Effective December 30, 2020, the ACCC Receivership operates in liquidation pursuant to Texas Insurance Code § 443.151 *et seq*.

## ARTICLE V
## REPRESENTATIONS AND WARRANTIES OF BUYER

Buyer makes the following representations and warranties to the Seller, each of which is true and correct on the date hereof, shall be true and correct in all material respects on the Closing Date, and shall survive the Closing of the transactions provided for herein:

5.1     **Organization**.  Buyer is a limited liability company organized and operating under the laws of the State of Texas and licensed as a managing general agent under applicable Laws.

5.2     **Authority**. Buyer has all requisite limited liability company power and authority to own, operate and lease its property, and to carry on its business as and where such is now being conducted.  Buyer has all requisite limited liability company power and authority to enter into this Agreement and the other documents and instruments to be executed and delivered by the Buyer pursuant hereto and to carry out the transactions contemplated hereby and thereby. The performance of this Agreement will not conflict with or result in the breach or violation of any of the Buyer's Governing Documents nor violate in any material respect the provisions of any contracts, commitments, or loan document to which the Buyer is a party or any applicable Laws. The execution and delivery of this Agreement and the other documents and instruments to be executed and delivered by the Buyer pursuant hereto, and the consummation of the transactions contemplated hereby or thereby, have been duly authorized by all necessary corporate action on the part of the Buyer, and this Agreement has been duly executed and delivered by the Buyer, acting through its authorized officers. No other or further corporate act or proceeding on the part of the Buyer is necessary to authorize this Agreement or the other documents and instruments to be executed and delivered by the Buyer pursuant hereto or the consummation of the transactions contemplated hereby and thereby. This Agreement constitutes, and when executed and delivered, the other documents and instruments to be executed and delivered by the Buyer pursuant hereto will constitute, valid binding agreements of the Buyer, enforceable against it in accordance with their respective terms, except as enforceability may be limited by: (a) the effect of any applicable bankruptcy, insolvency, reorganization, moratorium, rehabilitation, or similar Laws affecting the enforcement of creditors' rights generally; (b) the availability of the remedies of specific performance or injunctive relief, which may be subject to the discretion of the court before which any proceeding for such remedies may be brought; and (c) the exercise by any court of equitable judicial discretion before which any proceeding may be brought.

5.3     **Qualification**. The Buyer is duly qualified to do business, and is in good standing, in each jurisdiction wherein the character of the properties owned or leased by it, or the nature of its business, makes such licensing or qualification necessary.

5.4     **No Violation**. Neither the execution and delivery of this Agreement or the other documents and instruments to be executed and delivered by the Buyer pursuant hereto, nor the consummation by the Buyer of the transactions contemplated hereby and thereby (a) will violate any applicable Law or Order, or (b) will violate or conflict with, or constitute a default (or an event which, with notice or lapse of time, or both, would constitute a default) under, or will result in the termination of, or accelerate the performance required by, or result in the creation of any encumbrances upon any of the Acquired Assets, any term or provision of the Governing

Documents of the Buyer or of any contract, commitment, understanding, arrangement, agreement or restriction of any kind or character to which the Buyer is a party or by which the Buyer may be bound or affected.

5.5     **Approvals and Consents**. The execution, delivery and performance of this Agreement by the Buyer will not require the Buyer to obtain the consent or approval of, or to make any filing with, any Governmental Entity or any other Person.

5.6     **Litigation and Proceedings**. There are no actions, suits, proceedings, hearings, or investigation of any nature pending or, to the Buyer's Knowledge, threatened against or affecting it that would adversely affect the Buyer's ability to consummate the transactions contemplated by this Agreement.

5.7     **Finders Fees**. The Buyer has retained no broker, finder, investment broker or financial advisor in connection with this Agreement.

**ARTICLE VI**
**COVENANTS OF THE SELLER PENDING THE CLOSING DATE**

Seller hereby covenants that, prior to the Closing, except as otherwise consented to in writing by Buyer:

6.1     **Access to Information**. Seller shall give to the Buyer and to the Buyer's representatives access, during normal business hours throughout the period prior to the Closing, to all of the properties, books, contracts, commitments, and records of Seller relating to the Acquired Assets; provided, such access shall not unduly interfere with the normal business operations of Seller. During such period, the Seller shall furnish to the Buyer all such information concerning the Acquired Assets as the Buyer may reasonably request.

6.2     **Conduct of Business**. Except as specifically provided herein, the Seller shall conduct the business related to the Acquired Assets only in the ordinary course of the receivership.

6.3     **Transfers of Properties**. The Seller will not sell, transfer, otherwise dispose of, or encumber any of the Acquired Assets.

6.4     **Cooperation**. The Seller shall provide to the Buyer all information or assistance reasonably requested by the Buyer to consummate the transactions contemplated hereby. Without limiting the generality of the foregoing, the Seller shall cooperate with the Buyer and shall use commercially reasonable efforts to negotiate and finalize, or cause its applicable Affiliates to negotiate and finalize, any Ancillary Agreements.

6.5     **Compliance with Law**. The Seller will comply in all material respects with all Laws applicable to the Acquired Assets and the Transactions.

6.6     **Claims Handling**.  From the Effective Date through the earlier of the Closing Date or the termination of this Agreement, the Seller shall continue to administer the Alabama ACCC Business and the Texas ACCC Business and claims against Seller arising from the same

in a manner consistent with Texas Insurance Code § 443.101 et seq. and the Seller shall reasonably cooperate with the Buyer in connection with the adjustment of any claims with respect to the Assumed Policies, including, without limitation, consulting with the Buyer on all material claims handling decisions prior to the Closing Date and considering in good faith any recommendations of the Buyer with respect thereto.

## ARTICLE VII
## COVENANTS OF BUYER PENDING THE CLOSING DATE

The Buyer hereby covenants that, prior to the Closing, except as otherwise consented to in writing by an officer of Seller:

7.1     **Cooperation**. Buyer covenants to use commercially reasonable efforts to seek all required regulatory approvals.  The Buyer shall provide to the Seller all information or assistance reasonably requested by Seller to consummate the transactions contemplated hereby. Without limiting the generality of the foregoing, the Buyer shall cooperate with the Seller and shall use commercially reasonable efforts to negotiate and finalize, or cause its applicable Affiliates to negotiate and finalize, any Ancillary Agreements.

## ARTICLE VIII
## CONDITIONS TO OBLIGATIONS OF THE SELLER

The obligation of the Seller to proceed with the Closing hereunder is, at the option of Seller, subject to the conditions that, on the Closing Date:

8.1     **Performance by Buyer**.  As of the Closing Date, each of the representations and warranties of the Buyer contained herein is true in all material respects.  All covenants and agreements in this Agreement to be complied with and performed by the Buyer on or before the Closing Date shall have been complied with and performed in all material respects.

8.2     **Legal Challenge**. No suit, action, or other proceeding shall be pending before any Governmental Entity, and no claim shall have been asserted, in which it is or will be sought to restrain or prohibit or to obtain damages or other relief in connection with this Agreement or the consummation of the transactions contemplated hereby.

8.3     **Other Agreements**. Each of (a) the  Assumption Reinsurance Agreements, (b) the Transition Services Agreement of even date herewith by and among the Buyer and the Seller, in substantially the form attached hereto as **Exhibit B**, (c) the acknowledgment and agreement by Redpoint that it is jointly and severally liable with the Buyer for the payment obligations set forth in Section 2.2 with respect to the Texas ACCC Business, in substantially the form attached hereto as **Exhibit C**, and (d) the acknowledgment and agreement by Incline that it is jointly and severally liable with the Buyer for the payment obligations set forth in Section 2.2 with respect to the Alabama ACCC Business, in substantially the form attached hereto as **Exhibit C** (collectively, the "*Ancillary Agreements*"), shall have been entered into and delivered by each of the parties thereto, and such agreements shall be in full force and effect.  Such other documents as may be necessary or appropriate, in the reasonable opinion of the Seller or its counsel, to evidence the authorization of, and to effect the sale and purchase of the Acquired Assets and the

other transactions contemplated by this Agreement shall have been entered into and delivered by each of the parties thereto, and such agreements shall be in full force and effect.

8.4     **Reinsurance.**  Each of the Assuming Reinsurers shall certify that it has obtained adequate reinsurance coverage for the business that each is assuming in connection with the Assumption Reinsurance Agreements. In this connection, Redpoint shall certify that its reinsurance arrangements include a one hundred percent quota share of the reinsurance of the business it assumes pursuant to the Assumption Reinsurance Agreement.

## ARTICLE IX
## CONDITIONS TO OBLIGATIONS OF BUYER

The obligations of the Buyer to proceed with the Closing hereunder are, at the option of the Buyer, subject to the conditions that, on the Closing Date:

9.1     **Performance by the Seller**.  As of the Closing Date, each of the representations and warranties of the Seller contained herein is true in all material respects.  All covenants and agreements in this Agreement to be complied with and performed by the Seller on or before the Closing Date shall have been complied with and performed in all material respects.

9.2     **Legal Challenge**. No suit, action, or other proceeding shall be pending before any Governmental Entity, and no claim shall have been asserted, in which it is or will be sought to restrain or prohibit or to obtain damages or other relief in connection with this Agreement or the consummation of the transactions contemplated hereby.

9.3     **Approvals**.  All regulatory approvals that are required to consummate the transactions contemplated by this Agreement and the Ancillary Agreements shall have been obtained and shall be in full force and effect.

9.4     **Other Agreements**.  Each of the Ancillary Agreements shall have been entered into and delivered by each of the parties thereto, and each such agreement shall be in full force and effect.  Such other documents as may be necessary or appropriate, in the reasonable opinion of the Buyer or its counsel, to evidence the authorization of, and to effect the sale and purchase of the Acquired Assets and the other transactions contemplated by this Agreement shall have been entered into and delivered by each of the parties thereto, and such agreements shall be in full force and effect.

## ARTICLE X
## POST-CLOSING COVENANTS

Each Party, as applicable, hereby covenants and agrees that:

10.1     **Renewal of Insurance Policies**. The Seller will use commercially reasonable efforts to cooperate with the Buyer, as requested, in attempting to have Assumed Policies that expire, subsequent to the Effective Date, be directly renewed by the Assuming Reinsurers.

10.2     **Tax Matters**. The Seller agrees to pay all sales and use taxes related to the transactions contemplated by this Agreement.

10.3 **Transferred Funds Received After the Closing Date**. Any Transferred Funds received by the Seller after the Closing Date shall be promptly remitted to the Buyer.

10.4 **Further Assurances**. In case at any time after the Closing, any further actions are necessary or desirable to carry out the purposes of this Agreement or any of the other documents entered into in connection herewith or attached hereto, each of the Parties will take such reasonable further actions (including the execution and delivery of such further instruments and documents) as any other Party may reasonably request, all at the sole cost and expense of the requesting Party.

**ARTICLE XI**
**TERMINATION**

Notwithstanding anything to the contrary contained herein, this Agreement and the transactions contemplated hereby may be terminated in the following manner:

(a) **Termination by Seller**. This Agreement may be terminated at any time prior to the Closing by the Seller if the Seller is not then in material breach of any provision of this Agreement and there has been a breach, inaccuracy in or failure to perform any representation, warranty, covenant or agreement made by the Buyer pursuant to this Agreement that would give rise to the failure of any of the conditions specified in Article VIII and such breach, inaccuracy or failure has not been cured by the Buyer within ten (10) days of the Buyer's receipt of written notice of such breach from the Seller.

(b) **Termination by Buyer**. This Agreement may be terminated at any time prior to the Closing by the Buyer if the Buyer is not then in material breach of any provision of this Agreement and there has been a breach, inaccuracy in or failure to perform any representation, warranty, covenant or agreement made by the Seller pursuant to this Agreement that would give rise to the failure of any of the conditions specified in Article IX and such breach, inaccuracy or failure has not been cured by the Seller within ten (10) days of the Seller's receipt of written notice of such breach from the Buyer.

(c) **Termination by Mutual Agreement**. This Agreement may be terminated at any time by mutual agreement of the Parties in writing.

Upon termination of this Agreement, the Initial Payment shall be retained by the Seller; provided, however, that the Seller shall return the Initial Payment to the Buyer if such termination is a result of or related to (i) the action or inaction of the Special Deputy Receiver, or (ii) the failure, through no fault of the Buyer, to receive approval from the Receivership Court or any other Governmental Entity required to consummate the transactions contemplated hereby and by the Ancillary Agreements.

**ARTICLE XII**
**NOTICES**

All notices, requests, demands and other communications that are required or may be given pursuant to the terms of this Agreement shall be in writing, and delivery shall be deemed

sufficient in all respects and to have been duly given as follows: (a) on the actual date of service if delivered personally; (b) on the third day after mailing if mailed by first class mail return receipt requested, postage prepaid and properly addressed as set forth in this Section; or (c) on the day after delivery to a nationally recognized overnight courier service during its business hours or the express mail service maintained by the United States Postal Service during its business hours for overnight delivery with receipt, and properly addressed as set forth in this Section:

12.1    **Notices to Seller**. If to the Seller to:

> Prime Tempus, Inc., in and only in its capacity as Special Deputy Receiver of ACCC Insurance Company
> 27310 Ranch Road 12
> Dripping Springs, Texas 78620
> Attention: Craig A. Koenig, President
> Email: cakoenig@primetempus.com
> With a copy (not constituting notice) to:
> Wisener Nunnally Roth & Higgins, LLP
> 245 Cedar Sage Suite 240
> Garland, TX 75040
> Attention: Robert H. Nunnally, Jr.
> Email: robert@wnrlaw.com

12.2    **Notices to Buyer**. If to Buyer to:

> Nations General Insurance Agency, LLC
> P.O. Box 502248
> Sandy Springs, Georgia 31150
> Attention: Brian Crumbaker
> Email: bcrumbaker@embarkgeneral.com
> With a copy (not constituting notice) to:
> Bryan Cave Leighton Paisner LLP
> 211 N. Broadway, Suite 3600
> St. Louis, MO 63102
> Attention: Kevin B. Fischer
> Email: kbfischer@bclplaw.com

or to any such other address as designated in writing by the appropriate Party.

## ARTICLE XIII
## MISCELLANEOUS

13.1    **Press Releases and Communications**. No press release or public announcement related to this Agreement or the transactions contemplated herein, or prior to the Closing any other announcement or communication to the employees, agents or representatives of third-party marketing partners or suppliers of Seller, shall be issued or made by any Party without the joint approval of the Parties, unless required by Law (in the reasonable opinion of both Parties counsel), in which case each Party shall have the right to review such press release, announcement or communication prior to issuance, distribution or publication.

13.2     **Expenses**. Except as otherwise expressly provided herein, each of the Parties shall bear all expenses and costs incurred in connection with this Agreement and the transactions contemplated by this Agreement including, without limitation, the fees and disbursements of any legal counsel, financial advisors, accountants, or any other Person or representative whose services have been used by such Party.

13.3     **Assignment**. This Agreement and all of the provisions hereof shall be binding upon and inure to the benefit of the Parties hereto and their respective successors and permitted assigns. No Party shall have the right to assign or delegate any of the rights, interests or obligations hereunder, in whole or in part, Party without the prior written consent of the non-assigning Parties; provided, however, that either Buyer may assign, in whole or in part, the Acquired Assets to an Affiliate of either Buyer.

13.4     **Severability**. Any term or provision of this Agreement that is invalid or unenforceable in any situation in any jurisdiction shall not affect the validity or enforceability of the remaining terms and provisions hereof or the validity or enforceability of the offending term or provision in any other situation or in any other jurisdiction. If the final judgment of a court of competent jurisdiction declares that any term or provision hereof is invalid or unenforceable, the Parties agree that the court making the determination of invalidity or unenforceability shall have the power to reduce the scope, duration or area of the term or provision, to delete specific words or phrases, or to replace any invalid or unenforceable term or provision with a term or provision that is valid and enforceable and that comes closest to expressing the intention of the invalid or unenforceable term or provision, and this Agreement shall be enforceable as so modified after the expiration of the time within which the judgment may be appealed.

13.5     **References**. The table of contents and the Section and other headings and subheadings contained in this Agreement and the Exhibits and Schedules hereto are solely for the purpose of reference, are not part of the agreement of the Parties, and shall not in any way affect the meaning or interpretation of this Agreement or any Exhibit or Schedules hereto. All references to days or months shall be deemed references to calendar days or months. All references to "$" shall be deemed references to United States dollars. Unless the context otherwise requires, any reference to a "Section," "Exhibit," or "Schedule" shall be deemed to refer to a Section of this Agreement, Exhibit to this Agreement or a Schedule to this Agreement, as applicable. The words "hereof," "herein" and "hereunder" and words of similar import referring to this Agreement refer to this Agreement as a whole and not to any particular provision of this Agreement. The word "including" or any variation thereof means "including, without limitation" and shall not be construed to limit any general statement that it follows to the specific or similar items or matters immediately following it.

13.6     **Construction**. The Parties have participated jointly in the negotiation and drafting of this Agreement, and, in the event of an ambiguity or a question of intent or a need for interpretation arises, this Agreement shall be construed as if drafted jointly by the Parties and no presumption or burden of proof shall arise favoring or disfavoring any Party by virtue of the authorship of any of the provisions of this Agreement. The information contained in this Agreement and in the Schedules and Exhibits hereto is disclosed solely for purposes of this Agreement, and no information contained herein or therein shall be deemed to be an admission

by any Party to any third party of any matter whatsoever (including any violation of Law or breach of contract).

13.7    **Schedules and Exhibits**. All Schedules and Exhibits referred to herein form an integral part of this Agreement and shall be deemed to be part of this Agreement to the same extent as if set forth in the text of this Agreement.

13.8    **Complete Agreement**. This Agreement, including the Exhibits and Schedules referred to and incorporated by reference herein, and the documents referred to herein (including, without limitation, the Ancillary Agreements) contain the complete agreement between the Parties and supersede any prior understandings, agreements, representations, promises, warranties, or covenants by or between the Parties, written or oral, which may have related to the subject matter hereof in any way, including any data room agreements, bid letters, letters of intent, term sheets, summary issues lists or other agreements.

13.9    **Amendment**. Except as otherwise expressly provided herein, any provision of this Agreement, including any Exhibits or Schedules, may be amended only in a writing signed by each of the Parties.

13.10    **Waiver**. No failure or delay on the part of any Party in exercising any right, power or remedy under this Agreement will operate as a waiver of such right, power or remedy, and no single or partial exercise of any such right, power or remedy will preclude any other or further exercise of such right, power or remedy or the exercise of any other right, power or remedy.

13.11    **Third-Party Beneficiaries**. Except as otherwise expressly provided herein, nothing expressed or referred to in this Agreement shall be construed to give any Person other than the Parties to this Agreement any legal or equitable right, remedy or claim under or with respect to this Agreement or any provision of this Agreement.

13.12    **Delivery by Electronic Means**. This Agreement and any signed agreement entered into in connection herewith or contemplated hereby, and any amendments hereto or thereto, to the extent signed and delivered by email or other electronic means, shall be treated in all manner and respects as an original contract and shall be considered to have the same binding legal effects as if it were the original signed version thereof delivered in person. At the request of any Party hereto or to any such contract, each other Party hereto or thereto shall re-execute original forms thereof and deliver them to all other Parties. No Party hereto or to any such contract shall raise the use of a facsimile machine or email to deliver a signature or the fact that any signature or contract was transmitted or communicated through the use of facsimile machine or email as a defense to the formation of a contract, and each such Party forever waives any such defense.

13.13    **Counterparts**. This Agreement may be executed in multiple counterparts, any one of which need not contain the signature of more than one Party, but all such counterparts taken together shall constitute one and the same instrument.

13.14    **Governing Law**. All issues and questions concerning the construction, validity, interpretation and enforceability of this Agreement and the Exhibits and Schedules hereto shall

be governed by, and construed in accordance with, the Laws of the State of Texas, without giving effect to any choice of Law or conflict of Law rules or provisions (whether of the State of Texas or any other jurisdiction) that would cause the application of the Laws of any jurisdiction other than the State of Texas.

13.15 **Jurisdiction and Venue**. The Parties submit to the jurisdiction and venue of the Receivership Court, sitting without a jury, to resolve any items, whether sounding in tort, contract or otherwise, as to the interpretation, construction, performance and enforceability of, or relating in any way to, this Agreement and the Ancillary Agreements.

13.16 **Parties to the Agreement**. This Agreement is an agreement made by the ACCC Receivership as Seller and is not an individual agreement of the Special Deputy Receiver, the Receiver, or the State of Texas. The Buyer waives and releases the Receiver, the Special Deputy Receiver, the Commissioner, their current officers, employees and agents from any and all claims and liabilities arising from or related to this Agreement, including, without limitation, its negotiation. Nothing in this clause shall limit any Party's right to seek actual, direct damage remedies against the ACCC Receivership, to the extent allowed pursuant to Texas Insurance Code Chapter 443.

13.17 **Limitation of Damages**. Buyer may not recover any special, consequential, or exemplary damages for breach of this Agreement or any cause of action arising from or related to this Agreement. Buyer waives and releases the Receiver of ACCC Insurance Company, the Special Deputy Receiver of ACCC Insurance Company, the Commissioner, the State of Texas, their current and former officers, directors, shareholders, agents, employees, attorneys successors and assigns from any claim that they have made any agreement, warranty, representation or material omission related to this Agreement or any of the Ancillary Agreements. Nothing in this clause shall limited any Party's right to seek actual direct damage remedies in the ACCC Receivership, to the extent allowed under Chapter 443 of the Texas Insurance Code.

13.18 **Exclusion of Warranties**. Buyer is purchasing the Acquired Assets on an "AS IS" basis, with no representations or warranties made by the Seller other than those representations and warranties set forth in this Agreement. Notwithstanding anything contained in this Agreement to the contrary, the Seller is making no representations or warranties or statements (written or oral), whether express of implied, other than those set forth expressly in this Agreement. The Seller makes no representation or warranty that the books, records, data and documents which may be transferred in connection with the Acquired Assets shall be accurate or complete. Buyer waives any right to rely on representations, oral statements, or material omissions not set forth in this Agreement.

13.19 **Remedies Cumulative**. Except as otherwise provided herein, any and all remedies herein expressly conferred upon a Party shall be deemed cumulative with, and not exclusive of, any other remedy conferred hereby, or by Law or equity upon such Party, and the exercise by a Party of any one remedy shall not preclude the exercise of any other remedy.

13.20 **Due Authority**. Each person signing below on behalf of a Party is duly authorized to bind such Party to the terms hereof.

**[Signature Pages to Follow]**

**IN WITNESS WHEREOF**, each Party has caused this Agreement to be duly executed.


**BUYER**:

**NATIONS GENERAL INSURANCE AGENCY, LLC**

By: _Bill Caldwell_
⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯
    Name: Bill Caldwell
    Title: President


**SELLER**:

**ACCC INSURANCE COMPANY IN RECEIVERSHIP**

By: Prime Tempus, Inc., in and only in its capacity as Special Deputy Receiver of ACCC Insurance Company In Receivership and not individually


By: _____
    Name: Craig A. Koenig
    Title: President

**IN WITNESS WHEREOF**, each Party has caused this Agreement to be duly executed.

**BUYER**:

## NATIONS GENERAL INSURANCE AGENCY, LLC

By:_____

   Name: Bill Caldwell
   Title: President

**SELLER**:

## ACCC INSURANCE COMPANY IN RECEIVERSHIP

By: Prime Tempus, Inc., in and only in its capacity as Special Deputy Receiver of ACCC Insurance Company In Receivership

By: _____

   Name: Craig A. Koenig
   Title: President

## **EXHIBIT A-1**

**ASSUMPTION REINSURANCE AGREEMENT (REDPOINT)**

*(Attached)*

EXHIBIT 4



**From:** Robert Nunnally <robert@wnrlaw.com>
**Date:** November 4, 2021 at 5:09:43 PM EDT
**Subject: Re: Flores, et al v. ACCC Insurance Company & Embark General Insurance Agency, LLC**


Dear Alfonso:

I hope your November is off to a good start.

This email follows up on my request to get ACCC Insurance Company in liquidation dismissed from this matter. I saw that you obtained a summons for Embark and that Embark filed a Rule 12 motion. When you last wrote me, you were still considering whether to dismiss my client or to seek to serve my client.  Your clients has not moved forward with a request for Rule 4(d) acceptance of service or other service since September, but your clients have also not dismissed my client from the lawsuit.

Since the last time we communicated, the liquidation court issued its Order Granting Application to Approve Claims Filing Deadline and Approve Notices.  I also attach the proof of claim form and the notice and instructions.

My client asserts that no claim exists for WARN Act violations against the ACCC Insurance Company liquidation estate. But if a claim is to be asserted, then the way to assert that claim is for each claimant to file a proof of claim by June 30, 2022 using the proof of claim form and following the attached instructions, rather than a federal court complaint in violation of the stay of claims against ACCC Insurance Company.

I know you hoped to get back with me in September, but I write to see if you are now in a position to get back with me on this matter.  Please get back to me on this one.

Sincerely,


Robert H. Nunnally, Jr.
Wisener Nunnally Roth & Higgins LLP
245 Cedar Sage Suite 240
Garland, TX 75040
(972) 530-2200
(972) 530-7200

---

**From:** "Alfonso Kennard" <alfonso.kennard@kennardlaw.com>
**To:** "robert" <robert@wnrlaw.com>
**Cc:** "Ellen Sprovach" <ellen.sprovach@kennardlaw.com>, "cristabel jimenez" <cristabel.jimenez@kennardlaw.com>, "Matthew Miller" <Matthew.Miller@kennardlaw.com>, "Kristina Blanco" <kristina.blanco@kennardlaw.com>
**Sent:** Friday, September 3, 2021 10:42:50 AM
**Subject:** Re: Flores, et al v. ACCC Insurance Company & Embark General Insurance Agency, LLC

Robert,

We are discussing internally and should be able to get back with you next week. Thank you. Have a good weekend.



I.R.S. CIRCULAR 230 DISCLOSURE: As required by United States Treasury Regulations, you should be aware that this communication is not intended or written by the sender to be used, and it cannot be used, by any recipient for the purpose of avoiding penalties that may be imposed on the recipient under United States federal tax laws.

CONFIDENTIALITY STATEMENT: Furthermore, the information contained in this E-mail is legally privileged and confidential information which is intended only for the use of the individual or entity to whom it is addressed. If the reader of this message is not the intended recipient, you are hereby notified that any use, dissemination, distribution or reproduction of this message is strictly prohibited. Therefore, if you have received this communication in error, please notify me immediately by telephone at 713.742.0906 and delete the misdirected message from your system. Thank you for your attention to this subject matter stated herein.

On Sep 3, 2021, at 10:31 AM, Robert Nunnally <robert@wnrlaw.com> wrote:

Dear Alfonso:

I hope you are doing well.

I write to follow up on my request that ACCC Insurance Company be dismissed from the Flores lawsuit. As I wrote previously, any claim against the insurer should be pursued, if at all,
through the proof of claim process. I ask that you file a dismissal without prejudice of ACCC Insurance Company. We do not believe that any WARN Act claim exists, but if your client wants to assert one, it should follow the proof of claim process.

Sincerely,

Robert H. Nunnally, Jr.
Wisener Nunnally Roth & Higgins LLP
245 Cedar Sage Suite 240

Garland, TX 75040
(972) 530-2200
(972) 530-7200

**Disclaimer**

The information contained in this communication from the sender is confidential. It is intended solely for use by the recipient and others authorized to receive it. If you are not the recipient, you are hereby notified that any disclosure, copying, distribution or taking action in relation of the contents of this information is strictly prohibited and may be unlawful.

This email has been scanned for viruses and malware, and may have been automatically archived by **Mimecast Ltd**, an innovator in Software as a Service (SaaS) for business. Providing a **safer** and **more useful** place for your human generated data. Specializing in; Security, archiving and compliance. To find out more Click Here.